

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Theophilus S. Painter
Acting President
University of Texas
Austin, Texas

Dear Sir:

Opinion No. O-6568
Re: House Bill No. 740, Acts, 49th
Legislature, Regular Session, 1945,
transferring control of Galveston
State Psychopathic Hospital from
State Board of Control to the Board
of Regents of the University of
Texas, and related questions.

We have received your recent inquiry on the following subject:

"By the pertinent provisions of Chapter 47, Acts, Regular
Session of the Forty-second Legislature (1931) (Art. 3192,
Vernon's Annotated Civil Statutes), there was established
at Galveston a psychopathic hospital, to be known as the
Galveston State Psychopathic Hospital, for the treatment
of nervous and mental diseases, both in the hospital and
outpatient clinic, and was made available as a part of the
teaching facilities in mental medicine for the State
Medical College.

"By Chapter 246, Acts, Regular Session of the Forty-ninth
Legislature (1945) (Art. 3192a, Vernon's Annotated Civil
Statutes), the control and management of the Galveston
State Psychopathic Hospital, which was formerly vested in,
and to be exercised by the Board of Regents of The Uni-
versity of Texas, and that said hospital was no longer to
be considered a part of the eleemosynary service of the
State. The hospital was, however, to be continued to be
used as a hospital for the treatment of nervous and mental
diseases, both in the hospital and out-patient clinic as
a part of the teaching facilities in mental medicine for
the School of Medicine of The University of Texas at
Galveston.

"In connection with the contemplated opening and operation
of such hospital several questions have arisen in connec-
tion with the admission, care, treatment and discharging
of patients as follows:

"(1)  Do the courts of this State have authority to commit mental patients to the Galveston State Psychopathic Hospital for temporary treatment not to exceed ninety days?

"(2)  If patients are committed by proper authority of the courts of this State to the Galveston State Psychopathic Hospital, do the authorities in control of the management of this institution have any discretion as to what patients may be admitted for treatment therein?

"(3)  Does the State Psychopathic Hospital at Galveston have any legal right to restrain mental patients against their will in cases of emergency, and if so, in what cases may this be done and for how long may such patients be so held?"

Article 3174, Vernon's Annotated Civil Statutes of Texas, provides as follows:

"Each eleemosynary institution established by law shall be managed and controlled in accordance with the provisions of this title.  The general control, management and direction of the affairs, property and business of such institutions is vested in the State Board of Control."

Article 3192, Vernon's Annotated Civil Statute of Texas, provides as follows:

"There shall be established and maintained a Psychopathic Hospital at Galveston to be known as the Galveston State Psychopathic Hospital, and one at Dallas to be known as the Dallas State Psychopathic Hospital.  The Galveston State Psychopathic Hospital shall be a hospital for the treatment of nervous and mental diseases both in the hospital and out patient clinic, and shall be available as a part of the teaching facilities in mental medicine for the State Medical College.  The Dallas State Psychopathic Hospital shall be a hospital for the treatment of nervous and mental diseases both in the hospital and in out patient clinic."

House Bill No. 740, enacted by the 49th Legislature at its Regular Session in 1945 (on page 384, 1945, Vernon's Texas Session Law Service), provides as follows:

"An Act to transfer the control and management of the Galveston State Psychopathic Hospital from the State Board of Control to the Board of Regents of the University of Texas; providing said Hospital shall no longer be a part of the eleemosynary service of Texas; repealing all

laws or parts of laws in conflict; and declaraing an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. That from and after the effective date of this Act, the control and management of, and all rights, privileges,ppowers, and duties incident thereto, the Galveston State Psychopathic Hospital, located at Galveston Texas, which were formerly vested in and exercised by the State Board of Control, shall be transferred to, vested in, and exercised by the Board of Regents of The University of Texas, and, hereafter, the aforesaid Hospital shall no longer be a part of the eleemosynary service of the State of Texas.

"Sec. 2. The Galveston State Psychopathic Hospital shall continue to be used as a Hospital for the treatment of nervous and mental diseases, both in the Hospital and out-patient clinic, and shall be available as a part of the teaching facilities in mental medicine for the School of Medicine of the University of Texas, located at Galveston, Texas.

"Sec. 3. All laws and parts of laws in conflict herewith are hereby repealed to the extent of the conflict only.

"Sec. 4. The fact that there is now situated at Galveston, Texas, the Galveston State Psychopathic Hospital, consisting of a one hundred (100) bed mental hospital of substantial brick construction, erected at great expense to the State of Texas, which is not now being operated by the Board of Control for the benefit of the people of Texas, and the fact that the operation of said Hospital would also be of great benefit to the students of the School of Medicine of The University of Texas, as it was prior to the time it was shut down by the Board of Control, and the fact that the Hospital should be controlled and managed by the Board of Regents, of The University of Texas in connection with the School of Medicine of The University of Texas, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

It is clear from a study of the foregoing statutes that the Legislature intended to place the Board of Regents of the Univiersity of Texas in place and stead of the Board of Control in all matters relating to the control and management of the Galveston State Psychopathic Hospital. No right, privilege, power or duty incident thereto under the laws of this State was

changed, with the exception of the matter contained in the clause in Section 1 of said House Bill No. 740, wherein it is said that "the foregoing Hospital shall no longer be a part of the eleemosynary service of the State of Texas." To determine the meaning of this clause we must interpret the term "eleemosynary." Webster defines it, inter alia, as: "Relating or devoted to charity or alms." Consequently, we concluse that the eleemosynary system of the State of Texas is that part of the State system that is primarily given or devoted to charity. We find in the appropriation bill (House Bill No. 666) for Eleemosynary and Reformatory Institutions enacted in 1943 by the 48th Legislature for biennium beginning Sept.1, 1943, and ending August 31, 1945, a specific appropriation of $312,894.00 for salaries, maintenance and miscellaneous, and improvements, repairs and buildings, to the Galveston State Psychopathic Hospital. However, pursuant to the provisions of said House Bill No. 740, supra, we find in the appropriation bill (House Bill No. 173) enacted by the 49th Legislature in 1945, for the biennium beginning Sept. 1, 1945, and ending August 13, 1947, for the University of Texas Medical Branch the sum of $350,920.00 for the "Psychopathic Hospital." We find further in the "rider"to the specific appropriation to the University of Texas Medical Branch for the current biennium the following provisions:

> "There is also hereby appropriated to said Medical Branch to be used in connection with Medical Branch Hospitals all charges and fees collected from pay patients for the general operation thereof, including maintenance, support and salaries of employees, for each of the fiscal years covered by this appropriation, and any unexpended balance remaining in said fund at the close of the first fiscal year is hereby reappropriated to said fund for the second fiscal year. Provided, that the Board of Regents of The University of Texas is hereby authorized to fix reasonable rates to be charged and collected from pay patients of said hospital, and is further authorized to make and enter into contracts for the hospitalization of the indigent sick, and to accept donations and gifts for the support and maintenance of said hospitals."

From the foregoing, we are lead to the conclusion that not only did the Legislature intend that the management and control of said institution be changed, but it also intended a change in the fundamental purpose of the institution, i.e., from a state-supported charity institution, with the primary function of admitting all committed to it by the courts, whether indigent or able to pay, and its use for school purposes only incidental thereto; to a hospital to be used primarily as a school, with authority to choose the patients admitted thereto, whether paying or indigent, to be supported jointly by the State, the paying patients, and donations and gifts. We believe the effect

of said House Bill No. 740, supra, was to remove the
Galveston State Psychopathic Hospital from the application of
the provisions of Chapter 2, Title 51, Vernon's Annotated Civil
Statutes of Texas (Articles 3184-3201).

The portion of the "rider" quoted hereinbefore, provides that
the Board of Regents of the University of Texas is authorized
to accept pay patients for treatment in said hospital and to
make and enter into contracts for the hospitalization of the
indigent sick. From this we believe the Legislature contem-
plated that the said Board of Regents were empowered with dis-
cretion as to the number and types of patients to be admitted
thereto. This power we deem necessary to the effectiveness of
said institution in its exercise of Medical School functions,
but same would be nullified if the courts retained authority
to commit any and all insane persons to such institution.

Therefore, we answer your question No. (1) in the negative,
which renders an answer to your question No. (2) unnecessary.

In answer to your question No. (3), we believe that in cases of
emergency, such as when a patient becomes violent or dangerous
or in any case where it is deemed to the best interest of the
insane person or society at large that he be restrained, the
Galveston State Psychopathic Hospital would have the lawful
power to restrain such patient until he can be committed law-
fully to a state eleemosynary institution for the care of the
insane and other mentally ill persons. The dangerous lunatic
has no inalienable right to roam the country at will and
terrorize the populace. He must be confined until the legal
machinery designed to see that he received justice and the
benefits of due process of law is set in motion. See Opinion
No. O-685, a copy of which is herewith enclosed. Such restraint
could be only for a time reasonably sufficient to allow a lunacy
hearing and lawful commitment -- no exact period of time can be
set to fit all cases.

Trusting the foregoing fully answers your inquiry, we are,

                              Yours very truly

                         ATTORNEY GENERAL OF TEXAS

RLL:gb:mb/cg              By s/ Robert L. Lattimore Jr

APPROVED OCT. 29, 1945        Robert L. Lattimore, Jr.
Carlos. C. Ashley                      Assistant
FIRST ASSISTANT ATTORNEY
GENERAL

This opinion considered and approved in limited conference.